UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PHILLIP JEAN-LAURENT,                            :
                                                 :
                    Plaintiff,                   :     12 Civ. 1502 (JPO) (SN)
                                                 :
         -against-                               :     MEMORANDUM AND
                                                 :            ORDER
C.O. LAWRENCE, *et al*.,                         :
                                                 :
                    Defendants.                  :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

   *Pro se* plaintiff Phillip Jean-Laurent ("Plaintiff") brought this claim against Downstate Correctional Facility employees Superintendent Perez ("Perez"), Deputy Commissioner Lindquist ("Lindquist"), Sergeant Seymour ("Seymour"), Corrections Officer Lawrence ("Lawrence"), and "John Doe" and "Jane Doe" Defendants, all in their individual and official capacities, alleging various violations of Plaintiff's constitutional rights. Defendants[1] have moved to dismiss the case in its entirety, arguing that Plaintiff has failed to state a claim and that Defendants are protected by qualified immunity.[2] For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part.

---

[1] The motion was filed on behalf of all Defendants except for Lawrence and the "Jane Doe" and "John Doe" defendants, none of whom have been served. The motion is treated as on behalf of all Defendants.

[2] In their initial memorandum, Defendants assert that Plaintiff's claims also should be dismissed for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). After Plaintiff averred in his Opposition that he was not incarcerated at the commencement of this action, however, Defendants withdrew their failure to exhaust argument. *See Dilworth v. Goldberg*, No. 10 Civ. 2224 (RJH) (GWG), 2011 WL 3501869, at *14 (S.D.N.Y. July 28, 2011) (Report and Recommendation) (explaining that PLRA exhaustion "mandates exhaustion only for those actions filed by prisoners while 'confined' in a jail. Thus, the statute is inapplicable where the litigant commencing the action files suit after release from confinement." (citations omitted)), *adopted by* 2011 WL 4526555 (S.D.N.Y. Sept. 30, 2011).

I. **Background**

    A. **Factual Background**

        1. **The Clothing and Document Requests**

The facts set forth below are based on Plaintiff's allegations, which are presumed true for purposes of this motion.

On or about December 21, 2008, Plaintiff was transferred from Mid-State Correctional Facility ("Mid-State"), a New York State Department of Corrections ("DOCCS") facility, to Downstate Correctional Facility ("Downstate"), another DOCCS facility, in order to attend court appearances in New York City, before eventually being transferred again to a third DOCCS facility, Livingston Correctional Facility ("Livingston"). Plaintiff was at Downstate until the beginning of March 2009. However, there were two intervals during this period in which Plaintiff was moved from Downstate to Rikers Island Correctional Facility ("Rikers Island")— which is a New York City Department of Correction ("DOC") facility, not a DOCCS facility—in order to appear in court.

From December 24, 2008 to December 30, 2008, Plaintiff made requests—written and oral—for access to personal clothing, "cosmetics," and certain legal papers he required to work on an Article 78 petition.[3] Plaintiff's requests were ignored. On December 30, 2008, Plaintiff was sent to Rikers Island, where he stayed until returning to Downstate on January 12, 2009.

On February 4, 2009, Plaintiff was given access to some of the legal documents and materials he had requested. On that day, he also received a set of provisional clothes for his next transfer to Rikers Island.

---

[3] It appears that Plaintiff was given the amount of clothing mandated by Downstate procedures: "Each new reception inmate will receive (1) set of greens, underwear, socks and sneakers . . . ." Dkt. No. 16 ("Harben Decl."), Ex. C, at 6.

Plaintiff alleges that, as a result of not receiving sufficient clothing and cosmetics earlier,

> he contracted foot infections from showering without appropriate footwear in sometimes extremely dirty showers, he developed discomforting and very painful blisters underneath his feet consequent of wearing no socks when there was a need to wash the one pair he wor[e], he sustained zipper cuts on his penis from wearing no underwear when there was a need to wash to one set he wore, and he also developed a condition of extremely dry and irritable itchy skin that painfully cracked and bled.

(Compl. at ¶ 25.)

On March 5, 2009, Plaintiff was transferred to Livingston, where he received the rest of his legal documents. On April 16, 2009, Plaintiff filed an Article 78 petition in New York Supreme Court. The Article 78 petition concerned the punishment Plaintiff received as a result of his Tier III disciplinary hearing, which Plaintiff claimed to be "unduly harsh." (Harben Decl., Ex. D.) Justice Dennis S. Cohen, Acting Supreme Court Justice, denied the petition on the ground that "[t]he statute of limitations in this case was four months and that time period has lapsed. . . . Petitioner received notice of this determination on October 6, 2008, while at Mid-State Correction Facility. Petitioner filed this article 78 application on April 16, 2008."

### 2. The Strip Searches

Upon returning to Downstate from Rikers Island on January 12, 2009, Plaintiff was forced to undergo an intake process at Downstate, whereby he was stripped down to his underwear while his belongings were searched and inventoried by male and female officers.[4] Before undressing, Plaintiff informed Lawrence that his Islamic faith forbade him from being undressed in the presence of women, and requested to undress in the presence of male officers

---

[4] Downstate procedures mandate that persons returning from court "be stripped, frisked, deloused and showered." Harben Decl., Ex. C at 6.

only. Lawrence conferred with Seymour, and then denied this request, as a result of which Jane Doe #2 saw Plaintiff in his underwear.

Plaintiff then underwent a full body cavity search, after which he was required to proceed to the showers. He now claims that he was fully nude in the presence of Jane Doe #2 as he proceeded to the showers; in an earlier grievance, however, he alleged that his genitalia were covered by a ripped towel.

Plaintiff was again required to "undress and remain undress[ed]" in the presence of Jane Doe #2 on March 2, 2009, after his return to Downstate following his second stay in Rikers Island. (Compl. at ¶ 23.)

### 3. Plaintiff's Grievances

On January 15, 2009, Plaintiff filed two formal complaints. In the first, Plaintiff complained that several litigations in which he was involved "are in jeopardy of an adverse legal determination that will substantially affect me detrimentally, principally and solely as a result of Downstate[']s deliberate indifference. It has been 25 days since I've been on the draft and Downstate has since retained and deliberately refused to allow me to have access to my legal materials." (Harben Decl., Ex. B at 7.) In that same grievance, Plaintiff complained that, on December 30, 2008, "I was transferred to Riker's Island without any of my legal materials, no cosmetics, and no change of clothing. I was transferred to Rikers Island with only the clothes on my back." (*Id.*)

The other grievance concerned the January 12 strip search. (Harben Decl., Ex. C.) In this grievance, Plaintiff claimed that he "was required to removal all [of his] clothing and remain in [his] underwear." (*Id.* at 13.) Plaintiff also claimed that he was forced to "walk to the shower nude with a ripped towel barely covering my private parts." (*Id.* at 14.)

4

### 4. The Defendants

Plaintiff has sued three correctional officers, Lawrence, Jane Doe #2, John Doe #2 ("the Officer Defendants"); three sergeants, Seymour, John Doe #1, and Jane Doe #1 ("the Sergeant Defendants"); and the Superintendent of Downstate, Perez, all in their official and personal capacities.

### B. Procedural Background

Plaintiff filed his complaint *pro se* on February 28, 2012. (Dkt. No. 2.) On June 13, 2012, Defendants moved to dismiss the complaint. (Dkt. No. 14; Dkt. No. 19 ("Defs.' Mem.").) Plaintiff opposed the motion on November 9, 2012. (Dkt. No. 27.) Defendants replied on December 11, 2012. (Dkt. No. 29.)

## II. Discussion

### A. Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "*Pro* se status does not . . . excuse a plaintiff from compliance with the pleading standards of the Federal Rules of Civil Procedure. Nor does the latitude accorded a *pro* se litigant excuse him from meeting the requirements necessary to respond to dispositive motions." *Payne v. Oldcastle Precast, Inc.*, No. 10 Civ. 00887 (BSJ) (FM), 2012 WL 5873595, at *1 (S.D.N.Y. Nov. 19, 2012) (citations omitted). At the same time, *pro se* complaints are read liberally and interpreted as raising the strongest arguments they suggest. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). These rules govern the Court's analysis.

### B. Qualified Immunity at the Motion to Dismiss Stage

Government officials "performing discretionary functions generally . . . are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne,* 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The relevant question is whether the right at issue "clearly established" in a "particularized" sense:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citations omitted). "Prior case law need not present fundamentally similar facts and 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Collins v. Goord*, 438 F. Supp. 2d 399, 421 (S.D.N.Y. 2006) (quoting *Hope v. Peltzer*, 536 U.S. 730, 740-41 (2002)); *see also In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996) (explaining that, "though officials are not required to anticipate subsequent legal developments, a right may have been clearly defined even if the defendants' specific action had not previously been held unlawful if, in the light of pre-existing law, the unlawfulness [of the action was] . . . apparent" (alteration in original) (internal citations and internal quotation marks omitted)). In this district, a right is clearly established if it has been recognized by the Second Circuit or the Supreme Court. *Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir. 2003) (citing *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)).

For qualified immunity to bar suit at the motion to dismiss stage, "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004) (internal citations omitted); *accord Peoples v. Fischer,* No. 11 Civ. 2694 (SAS), 2012 WL 1575302, at *7 (S.D.N.Y. May 3, 2012).

### C. The Plaintiff's Claims

#### 1. Constitutional Claims against Defendants in their Official Capacities

Plaintiff's complaint seeks damages from Defendants in their individual and official capacities. The Eleventh Amendment, however, precludes suits for monetary damages from proceeding against states or state officials acting in their official capacity, unless the state has waived its sovereign immunity. *Florida Dep't. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 684 (1982) (*citing Alabama v. Pugh,* 438 U.S. 781 (1978)); *accord McMilian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 n.2 (1997) ("[A] suit against a governmental officer in his official capacity is the same as a suit against [the] entity of which [the] officer is an agent." (alterations in original) (citations and internal quotation marks omitted)). Section 1983 does not abrogate states' sovereign immunity, *Quern v. Jordan,* 440 U.S. 332, 343 (1979), and New York has not consented to § 1983 suits in federal court, *Gross v. New* York, 428 Fed. Appx. 52, 53 (2d Cir. 2011) (citing *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38–39 (2d Cir. 1977)). Thus, all of Plaintiff's constitutional claims against officers in their official capacities are dismissed for lack of subject matter jurisdiction.[5]

---

[5] As is explained *infra*, Plaintiff is also unable to bring his claim under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA") against Defendants in their official capacities.

### 2. Access to Courts Claim

#### a. The Sergeant Defendants

Plaintiff alleges that before his first trip to Rikers on December 30, 2008, he repeatedly asked the Sergeant Defendants for certain legal papers he needed to file an Article 78 petition, and that those requests were ignored. Plaintiff alleges that, as a result of the officers' decision to ignore him, his Article 78 petition was denied.[6]

"[I]t is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed." *Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987) (quoting *Johnson v. Avery*, 393 U.S. 483, 485 (1969)); *see also Hiney v. Wilson*, 520 F.2d 589, 591 (2d Cir. 1975) (confiscation of legal papers constitutions a constitutional violation of right to access to the courts). Moreover, this constitutional right imposes an affirmative duty on "prison authorities to assist inmates in the preparation and filing of meaningful legal papers." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). In order to successfully plead an access to courts claim, a plaintiff must allege (1) "that the defendant 'took or was responsible for actions that hindered [that plaintiff's] efforts to pursue a legal claim,'" *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997)), (2) "that the defendant's alleged conduct was deliberate and malicious," *id.* (citation omitted), and (3) "that a defendant caused actual injury, *i.e.,* took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim," *Montanez v. Cuoco*, 361 Fed. Appx. 291, 294 (2d Cir. 2010) (quoting *Monsky*, 127 F.3d at 247).

Liberally reading Plaintiff's Complaint, this Court holds that Plaintiff has stated an access to courts claim. By refusing to assist Plaintiff in retrieving his legal papers, Defendants allegedly

---

[6] A plaintiff's inability to bring an Article 78 petition can form the basis of an access to courts claim. *Collins*, 438 F. Supp. 2d at 417.

acted in such a way that hindered Plaintiff's efforts to pursue his legal claim. *Accord Ramos v. Criminal Court of State of New York*, No. 86 Civ. 2167 (RR), 1989 WL 32812, at *2 (E.D.N.Y. Mar. 28, 1989) (where ignoring a plaintiff's request to retrieve legal papers "reflected a callous and deliberate disregard for plaintiff's rights to present legal arguments to the court, it is conceivable that the alleged omission was the legal equivalent of a confiscation"). Moreover, construed liberally, Plaintiff's allegations sufficiently indicate deliberateness and maliciousness; the Complaint alleges that the Sergeants simply ignored Plaintiff's repeated oral and written requests for assistance, which could plausibly rise to the level of deliberate and malicious behavior.

Finally, Plaintiff has pleaded sufficient facts to prove causation. Pointing out that the statute of limitations on Plaintiff's Article 78 claim began to run on October 6, 2008, about eleven weeks before he was stripped of his legal papers, Defendants contend that Plaintiff is at fault for not filing his petition early. This argument is unpersuasive. Plaintiff had, under New York law, four months to file his Article 78 petition, and Plaintiff should not be punished for assuming that he would have the full statute of limitations period provided by law. Moreover, it is irrelevant that Plaintiff waited until April 16, 2009—approximately six weeks after he received all of his legal papers—to file his petition. By the time Plaintiff received all of his legal papers in March 2009, the four-month statute of limitations had already elapsed.

Finally, this Court cannot say at this early stage of the litigation that the Sergeant Defendants are entitled to qualified immunity as to this claim. While discovery may well prove that the Sergeant Defendants should be protected by qualified immunity, Plaintiff has sufficiently alleged that the Sergeant Defendants hindered his ability to file an Article 78 petition and thereby violated his clearly established right to access to the courts.

9

### b. Perez

Plaintiff also asserts his access to courts claim against Perez.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir. 1991)). "A supervisory official personally participates in challenged conduct not only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or (4) deliberate indifference to the rights of others." *Arar v. Ashcroft*, 585 F.3d 559, 616 (2d Cir. 2009) (citing *Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003)).

According to Plaintiff, on January 15, 2009—the same day he filed a grievance regarding his missing legal documents—Plaintiff sent "a separate inter-facility correspondence to Superintendent Perez," which "complained of the [the Sergeant Defendants' behavior]," and to which Perez did not respond. (Compl. at ¶ 20.) Thus, irrespective of whether denying an administrative grievance or appeal is grounds for liability, *see McKenna v. Wright*, 386 F.3d at 437 (noting that "it is questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of" (citing *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002)), at issue in this case is also Perez's alleged decision to ignore Plaintiff's letter concerning the Sergeant Defendants' ignoring of his repeated requests. Thus, Plaintiff has adequately stated a claim against Perez.

### 3. Inadequate Clothing Claim

Plaintiff claims that Seymour, John Doe #1, Jane Doe #1, and Perez violated his Eighth Amendment rights by failing to provide adequate clothing for him before he went from

Downstate to Rikers Island, as a result of which he suffered infections and blisters on his feet and "zipper cuts on his penis from wearing no underwear when there was a need to wash the one pair" he had.  (Compl. at ¶ 20, 25, 32-35.)  It is unclear whether Plaintiff contends that he had inadequate clothing during his time at Downstate as well.

The Eighth Amendment imposes an obligation on prison officials to "provide humane conditions of confinement" including "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994) (citing cases). To establish a violation of the Eighth Amendment on the basis of inadequate prison conditions, a prisoner must show that the defendants acted with "deliberate indifference to [his] health or safety." *Id.* at 834 (citations and internal quotation marks omitted); *accord Trammell v. Keane,* 338 F.3d 155, 162 (2d Cir. 2003) (citing cases).

The deliberate indifference standard consists of both an objective and a subjective prong. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994).  The objective component of a claim for deliberate indifference requires that the alleged deprivation be sufficiently serious that it denies a prisoner "the minimal civilized measure of life's necessities."  *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)).  A sufficiently serious deprivation means an objective "condition . . . that may produce death, degeneration or extreme pain . . . ."  *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996) (citation and quotation marks omitted).[7]

The allegations of Plaintiff's Complaint fail to satisfy the objective prong.  "Clothing is one of the necessities of civilized life, and while prisoners are not entitled to a daily change of

---

[7] Under the subjective component of the test, the prison officials "must have a 'sufficiently culpable state of mind.'  In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . ." *Farmer*, 511 U.S. at 834 (internal citations omitted).

11

clothes, at some point the denial of clean clothes could be a deprivation of constitutional magnitude." *Williams v. Detella*, No. 1997 WL 603884, at *2 (N.D. Ill. Sept. 23, 1997) (internal citation omitted). Plaintiff does not allege that he was forced to wear dirty clothing, however, so much as that he lacked clothing while his set was being washed. Forcing a prisoner to go without socks or underwear for short periods while the clothing is being washed does not rise to the level of cruel and unusual punishment. *Accord Gardner v. Mental Health Unit of, Sullivan Corr. Facility*, 07 Civ. 5535 (WHP), 2009 WL 1834382, at *2-3 (S.D.N.Y. June 17, 2009) (plaintiff's allegation that he was placed in a "very cold" observation cell for a week in a hospital gown failed to state an Eighth Amendment violation because plaintiff "was not actually deprived of clothing" and was not "bitterly cold"); *Fisher v. Dep't. of Corr.,* No. 92 Civ. 6037 (LAP), 1995 WL 608379, at *5 (S.D.N.Y. Oct. 16, 1995) (prison's failure to provide inmate with toothpaste and soap for eight consecutive days, lighting for twenty days, and hot food 65 percent of the time did not rise to the level of Eighth Amendment violation); *Gill v. Riddick,* No. 9:03 Civ. 1456, 2005 WL 755745, at *16 (N.D.N.Y. Mar. 31, 2005) (temporary deprivation of the right to use the toilet does not rise to the level of an Eighth Amendment violation because there was no "serious physical harm").[8]

Moreover, the Complaint appears to allege that some or all of the injury occurred while Plaintiff was at Rikers Island, which is not a facility under the control of Defendants in this

---

[8] Nor does Plaintiff's vague allegation that he lacked "appropriate footwear" for the showers satisfy the objective prong. *See Stevens v. City of New* York, No. 12 Civ. 3808 (JMF), 2013 WL 81327, at *3 (S.D.N.Y. Jan. 8, 2013) ("[C]ourts in this Circuit have consistently found that pain and other problems resulting from being forced to wear institutional footwear are not sufficiently serious to satisfy that prong." (citing cases); *see also McNatt v. Unit Manager Parker,* No. 99 Civ. 1397 (AHN), 2000 WL 307000, at *4 (D. Conn. Jan.18, 2000) (totality of conditions in restrictive housing unit, including that no shower shoes were provided and that there were dirty showers, did not rise to the level of Eighth Amendment violation).

action. This Court cannot hold the Downstate Defendants liable for the lack of additional clothing provided at Rikers Island.

Finally, even if Plaintiff had alleged a violation of the Eighth Amendment by Seymour, John Doe #1, Jane Doe #1, and Perez, the officers would be entitled to qualified immunity. No Second Circuit or Supreme Court case exists that would alert a reasonable officer that the alleged conduct—declining to provide Plaintiff an additional set of clothing—violated clearly established law.

Thus, Plaintiff's inadequate clothing claim must be dismissed.

### 4. Privacy and Religious Freedom Claims

Plaintiff claims violations of his constitutional rights to privacy and freedom of religion arising out of the strip searches that took place when Plaintiff reentered Downstate after a stay at Rikers Island.[9] Plaintiff's privacy and religious freedom claims stem from (1) being required to

---

[9] Plaintiff also brings this action pursuant to the RLUIPA. 42 U.S.C. § 2000cc-2(a) provides that "[a] person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution." RLUIPA defines "the term government" to include "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law." § 2000cc-5(4)(A).

The Supreme Court has recently held that RLUIPA does not provide for damages against officials in their official capacities. *Sossamon v. Texas*, 131 S.Ct. 1651, 1661 (2011); *see also Hall v. Ekpe*, 428 Fed. Appx. 93, 94 (2d Cir. 2011) ("Insofar as Hall's RLUIPA claim is asserted against defendants in their official capacities, dismissal of such claim is compelled by [*Sossman*]."). Moreover, while § 2000cc-5(4)(A) seems to imply at first glance that individual officers can be liable in their personal capacities, *see Orafan v. Goord*, No. 00 Civ. 2022 (LEK) (RFT), 2003 WL 21972735, at *9 (N.D.N.Y. Aug. 11, 2003) (holding that the "plain language of the statute" indicates that prison officers can be held liable in their individual capacity pursuant to RLUIPA), there is a growing consensus among courts that, because RLUIPA was passed under Congress's Spending Power, the statute cannot expose individual officers to liability, *see, e.g.*, *Pugh v. Goord*, 571 F. Supp. 2d 477, 506-07 (S.D.N.Y. 2008) (Sullivan, J.) (explaining that the individual officers are not, "at least in their individual capacities, 'contracting' parties who received federal funds" (citing *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007)); *see also*

13

stand "only in [his] underwear" while his belongings were searched by male and female officers, and (2) being required to "proceed to the shower area fully in the nude in the presence of Jane Doe #2 who was less than fifteen feet away . . . ."[10] (Compl. at ¶¶ 18-19.)  For the reasons outlined below, these claims are both barred by qualified immunity.[11]

### a. Privacy Claim

The Supreme Court has repeatedly "confirmed the importance of deference to correctional officials and explained that a regulation impinging on an inmate's constitutional

---

*Prescott v. Annetts*, No. 09 Civ. 4435 (CM) (LMS), 2010 WL 3020023, at *7 (S.D.N.Y. July 22, 2010) ("Although the Second Circuit has not decided the issue, numerous district courts in this Circuit have held that RLUIPA does not authorize claims for money damages against individual defendants in either their individual or official capacities.").  This Court agrees with Judge Sullivan's assessment of the law and thus holds that the individual defendants cannot be held liable in their individual capacities pursuant to RLUIPA.

[10] Plaintiff's Inmate Grievance Complaint states that he "was required to remove all [his] clothing and remain in [his] underwear."  (Harben Decl., Ex. C at 13.)  It says nothing about being completely naked on the way to the shower.  To the contrary, Plaintiff wrote in his grievance that he "walk[ed] to the shower nude with a ripped towel barely covering my private parts."  (*Id*. at 14.)  Moreover, while the grievance states that "a female officer observe[d] me with only my underwear on," the grievance says nothing about a female officer observing Plaintiff on the way to the shower.  (*Id*.)  This Court would be well within its discretion to strike "the changed and inconsistent factual allegations as false and sham."  *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1326 (9th Cir. 1998); *see also Green v. Niles*, No. 11 Civ. 1349 (PAE), 2012 WL 987473, at *4-5 (S.D.N.Y. Mar. 23, 2012) (plaintiff cannot defeat motion to dismiss with allegations that are "utterly irreconcilable" with past allegations).  In any event, even accepting Plaintiff's more recent allegations as true, Defendants are cloaked by qualified immunity, *see infra*.

[11] While this Court is permitted to determine whether a right exists before examining whether it was clearly established, it declines to do so here.  *Accord Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."); *see also Camreta v. Greene*, 131 S.Ct. 2020, 2032 (2011) ("In general, courts should think hard, and then think hard again, before turning small cases into large ones."); *cf.* Michael T. Kirkpatrick and Joshua Matz, *Avoiding Permanent Limbo: Qualified Immunity and the Elaboration of Constitutional Rights from Saucier to Camreta (and Beyond)*, 80 Fordham L. Rev. 643, 678  (2011) (encouraging courts to reach the merits in civil rights actions where the constitutional injuries at issue "are particularly ill-suited to development through alternative dynamics").

rights must be upheld if it is reasonably related to legitimate penological interests." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S.Ct. 1510, 1515 (2012) (citations and internal quotation marks omitted); *see also Ford v. McGinnis*, 352 F.3d 582, 595 (2d Cir. 2003) ("Determining whether a particular regulation [is unconstitutional] . . . involve[s] the weighing of the following factors.  First, there must be a valid and rational connection between the regulation and the legitimate government interest justifying it. Second, the claimed infringement is to be evaluated in light of the prisoners' other available means of exercising the right.  Third, the consequences of requiring accommodation of the right on prison staff, other prisoners and the allocation of prison resources generally should be considered.  Finally, the court should consider whether available, low-cost alternatives exist that would accommodate the right without compromising valid penological interests." (citing *Turner v. Safley*, 482 U.S. 78, 89-91(1987))). In particular, the Supreme Court has consistently upheld policies in correctional facilities requiring strip searches each time prisoners reenter the facility.  *See, e.g.*, *Florence*, 132 S.Ct. at 1516 (noting that in recent history "[p]olicies designed to keep contraband out of jails and prisons have been upheld . . . ."); *Hudson v. Palmer*, 468 U.S. 517 (1984) ("[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights." (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

Of course, "[a]lthough the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether." *Cumbey v. Meachum,* 684 F.2d 712, 714 (10th Cir.1982).  Moreover, "[s]hielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex is impelled by elementary self-respect and personal dignity." *Michenfelder v. Sumner*, 860 F.2d 328, 333-34 (9th Cir. 1988).  Nevertheless, courts

15

have also consistently held that "assigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference." *Id*. at 334 (citations omitted). Furthermore, "recent cases in this Circuit and elsewhere addressing inmates' right to privacy suggest that occasional, indirect, or brief viewing of a naked prisoner by a guard of the opposite sex"—which would include possible glimpses on the way to the shower—"may be permissible . . . ." *Correction Officers Benev. Ass'n of Rockland Cnty. v. Kralk*, No. No. 04 Civ. 2199 (PG), 2011 WL 1236135, at *11 (S.D.N.Y. Mar. 30, 2011) (citations omitted); *see also Israel v. City of New York*, No. 11 Civ. 7726 (JMF), 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012) (finding intake strip searches permissible and that "the presence of other inmates and officers, males and females, does not alter this determination"); *Baker v. Welch,* No. 03 Civ. 2267 (JSR)(AJP), 2003 WL 22901051, at *20 (S.D.N.Y. Dec. 10, 2003) ("the balance should be struck to allow incidental . . . viewing but prohibit regular . . . viewing."); *Miles v. Bell*, 621 F. Supp. 51, 67 (D. Conn. 1985) (explaining that the Second Circuit's opinion in *Forts v. Ward*, 621 F.2d 1210 (2d Cir. 1980), "merely emphasizes that in order for inmates to show a violation of their privacy rights, they must show that the 'viewing' by guards of the opposite sex occurs on a regular basis" and distinguishing *Fortis* from situations wherein "female guards . . . only occasionally view[] male inmates undressed or using the shower and toilet facilities.").  Thus, there would be no reason for an officer to believe that he violated a male prisoner's right to privacy by forcing him to stand in his underwear in close proximity to a female guard, nor by permitting him to be briefly glimpsed naked (or in a shorn towel) by an officer of the opposite sex.  Accordingly, this claim is precluded by qualified immunity.

b.     **Freedom of Religion Claim**

The taboo in the Islamic faith concerning male nudity in the presence of women is well known; nor would this Court second guess Plaintiff's allegation that being forced to stand in his underwear similarly infringed upon his freedom of religion. *See McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004) (explaining that a court must determine whether the refusal to accommodate a religious belief violates the First Amendment "without passing judgment on 'the centrality of different religious practices,' which is a misguided enterprise that the Supreme Court has called 'akin to the unacceptable business of evaluating the relative merits of differing religious claims'" (citation omitted)). Nonetheless, as explained *supra*, impingements on a prisoner's constitutional rights—including religious rights—that are rationally related to a legitimate penological interest are permissible. *See Hurley v. Ward*, 549 F. Supp. 174, 186 (S.D.N.Y. 1988) ("The religious tenets of the Muslims in the prison setting must give way to penological and security requirements of the prisons. Strip frisks after contact visits may be required of them as of any other inmate."); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (explaining that while "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion," there are nonetheless "limitations on the exercise of constitutional rights aris[ing] both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security" (internal citations omitted)).

Irrespective of whether the practice of forcing Muslim men to be stripped down to their underwear in the presence of female officers is constitutional, this Court cannot hold any of the named Defendants liable for money damages for such an alleged infringement as alleged here. As Judge Strom recently explained in a case involving the searching of a Muslim prisoner in his

underwear, "no case law from the United States Supreme Court or the Second Circuit Court of Appeals supports" the theory that it violates a Muslim inmate's constitutional rights to be searched in his underwear in the presence of a female officer.  *Smith v. Russell*, No. 09 Civ. 1136, 2007 WL 274756, at *3 (N.D.N.Y. Jan. 29, 2007); *see also Canedy v. Boardman*, 91 F.3d 30, 34 (7th Cir. 1996) (prison officials and female guard are entitled to qualified immunity against Muslim inmate's claim alleging female guards were permitted to see him completely nude during strip searches and showers where, at time of events in question, it was not clear that that interest outweighed prison's interest in having guards observe prisoners at all times and in all situations and in providing equal employment opportunity to women); *accord Shabazz v. Coughlin*, 852 F.2d 697, 701 (2d Cir. 1988) (since no appellate case law demonstrated that law on prison restrictions regarding prayer was clearly established at time of alleged violation, district court erroneously denied defendants summary judgment).  Therefore, Defendants are shielded by qualified immunity as to this claim.

**IV.   Conclusion**

For the foregoing reasons, Defendants motion to dismiss is GRANTED in part and DENIED in part.  The access to courts claim against the Sergeant Defendants and Perez in their individual capacities remains, while all other claims are dismissed.

The Clerk of Court is directed to close Docket Entry 14.

SO ORDERED.

Dated: New York, New York
       March 19, 2013

_____
J. PAUL OETKEN
United States District Judge