UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

PHILLIP JEAN-LAURENT,

                Plaintiff,

                              12-CV-1502 (JPO)
      -v-

                              OPINION AND ORDER
C.O. LAWRENCE, *et al.*,

                Defendants.

-----------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Pro se plaintiff Phillip Jean-Laurent ("Plaintiff") brings this action alleging violations of his constitutional rights. Plaintiff's remaining claim asserts that Defendants Sergeant Joseph Seymour ("Seymour"), two unidentified sergeants designated as Sgt. John Doe #1 and Sgt. Jane Doe #1[1] (collectively with Seymour, the "Sergeant Defendants"), and Superintendent Ada Perez ("Perez"; collectively with the Sergeant Defendants, "Defendants") violated his constitutional right of access to courts by failing to provide him with certain legal materials in a timely manner. Defendants now move for summary judgment. For the reasons that follow, the motion is granted.

---

[1] Defendants urge the Court to dismiss the claims against the unidentified and unserved Sergeant Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure. (Dkt. No. 75 ("Def. Br.") at 1 n.1.) Because Defendants' motion for summary judgment is granted on other grounds, the Court does not reach this argument.

I.  **Background**

    A.  **Facts**[2]

Plaintiff was incarcerated in the New York state prison system from July 25, 2005, through September 10, 2010.  (Dkt. No. 74 ("Def. 56.1 Stmt.") ¶ 1; Dkt. No. 84 ("Pl. 56.1 Response") ¶ 1.)  At the end of July 2008, Plaintiff was an inmate at Cape Vincent Correctional Facility ("Cape Vincent").  (Def. 56.1 Stmt. ¶ 6; Pl. 56.1 Response ¶ 6.)  On July 29, 2008, Plaintiff was involved in a physical altercation with another inmate.  (Def. 56.1 Stmt. ¶¶ 6, 11; Pl. 56.1 Response ¶¶ 6, 11; Dkt. No. 70 ("Harben Decl.") Ex. B ("Jean-Laurent Depo.") at 62.)  In a prison disciplinary hearing on August 1, 2008, Plaintiff pleaded guilty to charges arising from the fight.  (Def. 56.1 Stmt. ¶ 6; Jean-Laurent Depo. at 74-75.)  As punishment, Plaintiff was given six months in the Special Housing Unit ("SHU"), a recommended loss of three months of "good time," and six months of lost privileges, and was also ordered to pay restitution in the amount of $45.  (Def. 56.1 Stmt. ¶ 7; Pl. 56.1 Response ¶ 7.)  Plaintiff asserts that his guilty plea to the disciplinary charges was involuntary because he was misled into believing that the other participant in the fight would also be disciplined.  (Pl. 56.1 Response ¶ 6; Jean-Laurent Depo. at 62-64.)

On August 26, 2008, Plaintiff was transferred to Mid-State Correctional Facility ("Mid-State"), and then, on December 23, 2008, to Downstate Correctional Facility ("Downstate").  (Def. 56.1 Stmt. ¶ 17; Pl. 56.1 Response ¶ 17; Dkt. No. 72 ("Perez Decl.") Ex. A.)  On December 30, 2008, Plaintiff was temporarily transferred from Downstate to a New York City facility on Rikers Island so that he could attend court proceedings in New York City.  (Def. 56.1 Stmt.

---

[2] The following facts are taken from the parties' submissions relating to the motion for summary judgment and are undisputed, unless otherwise noted.

2

¶¶ 18-19; Pl. 56.1 Response ¶¶ 18-19.)  Plaintiff returned to Downstate on January 12, 2009. (Def. 56.1 Stmt. ¶ 20; Pl. 56.1 Response ¶ 20.)

On January 15, 2009, Plaintiff filed a grievance in which he requested access to certain legal materials that were not transferred with him to Downstate or to Rikers.[3] (Def. 56.1 Stmt. ¶ 21; Pl. 56.1 Response ¶ 21; Perez Decl. Ex. D.)  In the grievance, Plaintiff explained that he was involved in several state and federal litigations and risked adverse consequences in those litigations if he could not access his legal materials.  (Perez Decl. Ex. D.)

On February 4, 2009, Plaintiff received some of the legal materials he sought.  (Def. 56.1 Stmt. ¶ 24; Pl. 56.1 Response ¶ 24; Perez Decl. Ex. C.)  Defendant Perez, the Superintendent of Downstate, responded to Plaintiff's grievance regarding the legal materials on February 19, 2009, and asserted her understanding that by that point Plaintiff had received all of his legal materials.  (Perez Decl. Ex. C.)  Plaintiff appealed from this decision on February 27, 2009, and stated that some of his legal materials still had not been provided to him at Downstate.  (*Id.*)  Ultimately, Plaintiff gained full access to his legal materials once he was transferred to Livingston Correctional Facility ("Livingston") on March 5, 2009.  (Dkt. No. 85 ("Pl. Br.") Ex. Q ¶ 10.)

On April 16, 2009, Plaintiff filed an Article 78 petition in New York state court.[4] (Def. 56.1 Stmt. ¶ 34; Pl. 56.1 Response ¶ 34.)  The Article 78 petition concerned the punishment

---

[3] Plaintiff states that he filed the formal grievance only "after informal remedial procedures were ineffective." (Pl. 56.1 Response ¶ 21; *see also* Jean-Laurent Depo. at 30-34, 38-39.)  He also sent a letter to Brian Fischer, who was then the Commissioner of the New York Department of Correctional Services ("DOCS"), on January 26, 2009.  (Dkt. No. 85 ("Pl. Br.") Ex. H.)

[4] Plaintiff states that he attempted to file the Article 78 petition before his transfer to Downstate, but that his draft petition was rejected by the state court for technical reasons.  (Def. 56.1 Stmt. ¶ 31; Pl. 56.1 Response ¶ 31; *see also* Pl. Br. Ex. J.)

Plaintiff had received as a result of his Tier III[5] prison disciplinary hearing, which Plaintiff claimed to be "unduly harsh." (Pl. Br. Ex. I.) On July 8, 2009, the Honorable Dennis S. Cohen, Acting Supreme Court Justice, denied the petition, ruling that

> [t]he statute of limitations in this case was four months and that time period has lapsed. The Tier III administrative appeal was affirmed on October 1, 2008. Petitioner received notice of this determination on October 6, 2008, while at Mid-State Correctional Facility. Petitioner filed this article 78 application on April 16, 2009.

(*Id.* (citation omitted).) Plaintiff's motion to reargue was denied on October 13, 2009, again on grounds of untimely filing. (Pl. Br. Ex. K.)

### B. Procedural Background

Plaintiff, proceeding *pro se*, filed this suit on February 28, 2012. (Dkt. No. 2.) On June 13, 2012, Defendants moved to dismiss the complaint. (Dkt. No. 14.) In an opinion filed March 19, 2013, the Court granted the motion in part and denied it in part. *Jean-Laurent v. Lawrence*, No. 12 Civ. 1502 (JPO) (SN), 2013 WL 1129813 (S.D.N.Y. Mar. 19, 2013). The opinion dismissed Plaintiff's claims against state officials in their official capacities on grounds of Eleventh Amendment immunity. *Id.* at *4. The Court also dismissed Plaintiff's inadequate clothing claim, as well as Plaintiff's privacy and religious freedom claims, on grounds of qualified immunity. *Id.* at *6-9. Plaintiff's access to courts claim against Perez and the Sergeant Defendants was permitted to proceed. *Id.* at *4-6. On March 28, 2014, the Court denied Defendants' motion for reconsideration concerning the access to courts claim, ruling that

---

[5] "The most serious [prison disciplinary] violations are the subject of Tier III hearings and may result in SHU confinement for the remainder of the inmate's prison time, as well as forfeiture of 'good time' credits." *Porter v. Coughlin*, 421 F.3d 141, 142 n.1 (2d Cir. 2005).

Plaintiff had pleaded a nonfrivolous underlying claim. *Jean-Laurent v. Lawrence*, No. 12 Civ. 1502 (JPO) (SN), 2014 WL 1282309 (S.D.N.Y. Mar. 28, 2014).

Following discovery, Defendants moved for summary judgment on July 30, 2014. (Dkt. No. 68.) After several extensions of time, Plaintiff opposed the motion on October 21, 2014. (Dkt. No. 85.) Defendants filed a reply on November 10, 2014. (Dkt. No. 88.)

**II.     Legal Standards**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the party bearing the burden of proof at trial must come forward with evidence on each element of its claim or defense illustrating its entitlement to relief. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). It cannot rely upon mere "conclusory statements, conjecture, or speculation" to meet its burden. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence. Fed. R. Civ. P. 56(c); *Liberty Lobby*, 477 U.S. at 250-51. The court should view all evidence "in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor," and a motion for summary judgment may be granted only if "no reasonable trier of fact could find in favor of

5

the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted).

Because Plaintiff is proceeding pro se, the Court "read[s] his papers liberally and interpret[s] them to raise the strongest arguments that they suggest." *Gerstenbluth v. Credit Suisse Sec. (USA) LLC*, 728 F.3d 139, 142 (2d Cir. 2013) (internal quotation marks omitted).

**III.   Discussion**

The constitutional right of access to courts guarantees inmates a "reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 356 (1996).  The courts of appeals have recognized two variants of claims for denial of access to courts: first, "forward-looking claims," where "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time," and second, "backward-looking access claims," which cover "specific cases that cannot now be tried (or tried with all material evidence)" due to the actions of state officials. *Christopher v. Harbury*, 536 U.S. 403, 413-14 & n.11 (2002).  "The Second Circuit has emphasized, however, that the viability of [backward-looking] claims is far from clear, pointing out that the [Supreme Court's] *Harbury* decision was careful not to endorse their validity." *McNaughton v. de Blasio*, No. 14 Civ. 221 (KPF), 2015 WL 468890, at *12 (S.D.N.Y. Feb. 4, 2015) (quoting *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012)) (internal quotation marks and brackets omitted).[6]

---

[6] Recent decisions by courts in this district have similarly hesitated to recognize a cause of action for backward-looking access to courts. *See McNaughton*, 2015 WL 468890, at *12 (ruling that, even assuming the existence of backward-looking access claims, such a claim failed as pleaded by plaintiff); *Tavares v. N.Y.C. Health & Hosps. Corp.*, No. 13 Civ. 3148 (PKC) (MHD), 2015 WL 158863, at *7-8 (S.D.N.Y. Jan. 13, 2015) (same).  At least one court of appeals has also declined to rule on the validity of backward-looking access claims following *Harbury*.  *See Jennings v. City of Stillwater*, 383 F.3d 1199, 1209 (10th Cir. 2004).  Several other circuits

Because the availability of a backward-looking access claim is unclear in this circuit, its elements are not well settled. *See Stevens v. Webb*, No. 12 Civ. 2909 (KAM), 2014 WL 1154246, at *7 (E.D.N.Y. Mar. 21, 2014) ("There is scant case law on backward-looking access to the courts claims in this Circuit . . . ."). The case law from the Supreme Court and the courts in this circuit suggests four elements. First, the plaintiff "must identify a nonfrivolous, arguable underlying claim." *Harbury*, 536 U.S. at 415 (internal quotation marks omitted). Second, the plaintiff must establish that the defendant "took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (quoting *Casey*, 518 U.S. at 351) (brackets and internal quotation marks omitted). Third, the plaintiff "must show that the defendant's alleged conduct was deliberate and malicious."[7] *Jean-Laurent*, 2013 WL 1129813, at *4 (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)) (internal quotation marks omitted). Fourth, the plaintiff must demonstrate that "the defendant's actions resulted in an actual injury to the plaintiff." *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Davis*, 320 F.3d at 351).

---

consider backward-looking access claims to be viable. *See, e.g.*, *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013); *Broudy v. Mather*, 460 F.3d 106, 120 (D.C. Cir. 2006).

[7] At least one district court in this circuit has questioned whether maliciousness is properly a part of the test for a backward-looking access to courts claim, given that this element may not be sanctioned by the Second Circuit. *See Desmarat v. Artus*, Civ. No. 08 Civ. 977 (DNH/RFT), 2011 WL 1564605, at *7 (N.D.N.Y. Mar. 25, 2011) (stating that "published decisions from the Second Circuit do not impose this extra element of maliciousness, though many district cases nonetheless have interjected it into their analysis" (citing cases)), *report & rec. adopted*, 2011 WL 1557914 (N.D.N.Y. Apr. 25, 2011). Other circuits do not include such an element. *See Broudy*, 460 F.3d at 120 (listing the elements of a backward-looking denial of access claim as (1) "a non-frivolous, arguable underlying claim"; (2) a showing that plaintiffs were "denied a remedy for their underlying claims" and that such remedy was "completely foreclosed"; and (3) that "it was the defendants' actions that have cut off [the plaintiffs'] remedy" (internal quotation marks omitted)); *see also Flagg*, 715 F.3d at 174.

It is unnecessary here to determine the viability of a backward-looking right of access claim within this circuit.  Even assuming that such a claim is actionable, Plaintiff has failed to show that there is sufficient evidence supporting each element of his claim to create a triable issue of fact.[8]  "[W]hen the burden of proof at trial would fall on the nonmoving party," summary judgment is generally proper where the movant "point[s] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (internal quotation marks omitted).  Here, Plaintiff has presented no evidence at summary judgment to demonstrate that Defendants' actions—that is, the conduct that deprived Plaintiff of access to certain legal materials—were deliberate or malicious.  If Defendants' actions were negligent or even less culpable, then they cannot be held liable on Plaintiff's claim.  *See, e.g.*, *Holmes v. Grant*, No. 03 Civ. 3426 (RJH) (RLE), 2006 WL 851753, at *12 n.9 (S.D.N.Y. Mar. 31, 2006) (stating that "[m]ere negligence resulting in the loss of legal papers . . . does not state an actionable claim" for denial of access to courts).

---

[8] The Court also notes that there is some question about whether Defendants are entitled to qualified immunity on the backward-looking access to courts claim, given the Second Circuit's statement that the "viability of backward-looking right-of-access claims is far from clear in this Circuit." *Sousa*, 702 F.3d at 128.  In the qualified immunity analysis, a court would determine whether Plaintiff's backward-looking access to courts claim was established "beyond debate," *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011), such that "any reasonable official in the defendant's shoes would have understood that he was violating it," *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).  Certain principles regarding the right of access to courts were clearly established during the relevant time period.  *See, e.g.*, *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (holding that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers").  It is unclear, however, whether the uncertain status of the backward-looking *claim* causes the access *right* at issue to be unsettled for purposes of qualified immunity.  Because Defendants' motion for summary judgment is granted on other grounds, the Court declines to reach this question.

The evidence in the record demonstrates that, after Plaintiff filed a grievance in mid-January 2009, prison officials who are not parties to this suit looked into the situation and arranged for the shipment of legal materials to Plaintiff on February 4, 2009.[9] (Perez Decl. Ex. D.) Perez declared that she understood Plaintiff to have all of his legal materials by the time the matter reached her on February 19, 2009. (*Id.* Ex. C.) Plaintiff filed an appeal from this determination on February 27, 2009, and stated that only some of his legal materials had been made available to him. (*Id.*) Plaintiff states that he received all of his legal materials when he was transferred to Livingston on March 5, 2009. (*See* Pl. Br. at 13.) By this time, the statute of limitations had elapsed. (Def. 56.1 Stmt. ¶¶ 34-35; Pl. 56.1 Response ¶¶ 34-35.)

It is undisputed that Plaintiff was not able to access some of his papers for a period of time after his transfer to Downstate, and that the deadline for Plaintiff's Article 78 petition elapsed before he received all of his legal materials. But the evidence that Plaintiff has produced at summary judgment[10] simply does not show that Defendants engaged in any deliberate conduct—much less malicious conduct—that denied Plaintiff access to the courts. *See Res.*

---

[9] While there is no evidence that Defendants were specifically notified of the impending expiration of the statute of limitations for Plaintiff's Article 78 proceeding, Perez was on notice of the risk of a detrimental effect on Plaintiff's legal proceedings. In a letter dated January 26, 2009, Plaintiff wrote to then-DOCS Commissioner Brian Fischer (copied to Perez) that "certain limitations periods . . . are very near approaching and because pertinent legal materials are being withheld from me, I am not able to timely begin certain legal proceedings that will indeed affect my substantial rights and interests." (Pl. Br. Ex. H, at 1.) However, while Plaintiff's letter enumerates matters including three trials, an "appeal matter" in the New York Appellate Division, and a federal habeas proceeding, there is no mention of a forthcoming Article 78 petition. (*Id.* at 1-2.)

[10] The Court notes that Plaintiff was advised of the requirement that he oppose summary judgment by submitting evidence, and not by relying on the allegations of his complaint. (Dkt. No. 69.) *See, e.g., Jova v. Smith*, 582 F.3d 410, 414 (2d Cir. 2009) (per curiam) (holding that a pro se litigant generally must receive "actual notice . . . of the consequences of not responding adequately to a summary judgment motion").

*Developers, Inc. v. Statute of Liberty-Ellis Island Found.*, 926 F.2d 134, 141 (2d Cir. 1991) (stating that summary judgment is permissible where mental state is in issue if "only speculative allegations are offered to demonstrate the existence of state of mind after ample opportunity to engage in relevant discovery").[11]

Plaintiff argues that the question of whether Defendants' conduct was deliberate and malicious was already decided in the motion to dismiss and, under the doctrine of the law of the case, should not be reconsidered. (Pl. Br. at 16.) "The 'law of the case' doctrine posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Sagendorf-Teal v. Cnty. of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996). However, "[a]pplication of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001).

The law of the case doctrine does not apply here. *See Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir.) (holding that the doctrine of law of the case "would not preclude a district court from granting summary judgment based on evidence after denying a motion to dismiss based only on the plaintiff's allegations"), *cert. denied*, 134 S. Ct. 119 (2013). The Court's initial decision was made at the motion to dismiss stage, when it was bound to accept Plaintiff's allegations regarding deliberateness as true. *See Jean-Laurent*, 2013 WL 1129813, at *5 (holding that, "construed liberally, Plaintiff's allegations sufficiently indicate

---

[11] Plaintiff also contends that Defendants did not provide certain information to him in discovery, despite his interrogatories and document requests. (*See* Pl. Br. at 7; *see also, e.g.*, Pl. 56.1 Response ¶¶ 3-4.) The Court notes that Plaintiff did not move to compel production of this information. *See* Fed. R. Civ. P. 37(a). More importantly, none of the discovery requests in question appear likely to produce information relevant to this factor of Plaintiff's claim, and Plaintiff does not argue that the purportedly withheld discovery has precluded him from presenting evidence on this element of his claim.

deliberateness and maliciousness"). Now, however, at summary judgment, Plaintiff—as the party who bears the burden of proof at trial—must show evidence of his entitlement to relief. *See Celotex*, 477 U.S. at 322 (stating that a district court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Plaintiff has failed to present sufficient evidence that Defendants' conduct was deliberate or malicious to permit a jury to "reasonably find" in his favor. *See Liberty Lobby*, 477 U.S. at 252. Because Plaintiff's claim cannot survive without support for this element, summary judgment must be granted to Defendants.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiff's remaining claim is dismissed.

The Clerk of the Court is directed to terminate the motion at docket entry 68 and to close this case.

SO ORDERED.

Dated: March 16, 2015
New York, New York

_____
J. PAUL OETKEN
United States District Judge

COPY MAILED TO PRO SE PARTY